CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 09 2014

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HAROLD GARNER,<br>Plaintiff, | ) | Case No.: 7:14-cv-00081-GEC |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CHARLES STEGER, JR., | ) | |
| MARK McNAMEE, | ) | By:  Glen E. Conrad |
| ROBERTS WALTERS, | ) | Chief United States District Judge |
| DENNIS DEAN, and | ) | |
| TIMOTHY D. SANDS, | ) | |
| Defendants. | ) | |

Pending before the court is defendants' motion to dismiss the first amended complaint, Dkt. No. 3, which seeks dismissal of plaintiff's amended complaint in its entirety. Plaintiff has filed a response in opposition, Dkt. No. 12, and defendants have filed a reply, Dkt. No. 13. The court heard oral argument on the motion and it is now ripe for disposition. For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

I.  **Background**

A.  **General Factual Background and Parties**

Accepting the well-pled facts in the first amended complaint as true, as this court must when ruling on a motion to dismiss, see Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008), the facts of case are as follows:

Plaintiff Harold Garner ("Garner") is currently employed as a professor at Virginia Polytechnic Institute and State University ("Virginia Tech" or the "University"). Garner was hired in October 2009 to be the Executive Director of the Virginia Bioinformatics Institute ("VBI"). In March 2012, Garner's position was changed to that of Director of the Medical

Informatics and Systems Division at VBI.[1] Garner brought this action against Charles Steger ("Steger"), former President of Virginia Tech; Mark McNamee ("McNamee"), Provost of Virginia Tech; Robert Walters ("Walters"), Vice President for Research at Virginia Tech; and Dennis Dean ("Dean"), current Director of VBI, in their official and individual capacities. The court recently allowed plaintiff to substitute Timothy D. Sands, the current President of Virginia Tech, in place of Steger as to claims asserted against Steger in his official capacity. Dkt. No. 17. Garner's complaint contains three claims brought pursuant to 42 U.S.C. § 1983. All three allege that his change in position constituted a denial of due process in violation of the United States Constitution. Dkt. No. 2, ¶¶ 1-9.

### B.     Original Hiring and Subsequent Audit

Garner was hired as the Executive Director of VBI in October 2009. In a document titled the "Terms of Faculty Offer" and signed by Garner and by Steger on behalf of Virginia Tech, the only monetary compensation referenced was Garner's salary—a base salary of $250,000 plus a $60,000 annual administrative supplement. See Dkt. No. 3-1 at 1-3. In a letter sent to Garner enclosing that document, Steger also referred to "other matters related to his appointment as Executive Director of the [VBI]." Dkt. No. 3-1 at 4-6. That letter stated additional terms that were not in the signed "Terms of Faculty Offer" document. Specifically, the letter provided that Garner would be provided with a start-up package that would include a one-time equipment expenditure of $300,000 to $500,000, as well as $1,000,000 in annual salaries to hire laboratory staff and key researchers. Id. at 5.[2] As described by the complaint, $500,000 of that was for

_____

[1] The true nature of this change in position, and whether it was a demotion, sanction, or simply a reassignment, is vigorously contested by the parties and at the heart of the motion to dismiss.

[2] The letter indicates that the research faculty (whose salaries accounted for $500,000 of the $1,000,000) would be expected, "[a]fter an appropriate start-up period," "to buy out a substantial portion of their positions so funds can be freed for other purposes." Dkt. No. 3-1 at 5.

2

laboratory funding and was "in lieu of an endowed chair" and the other $500,000 of that annual

expenditure was designed "to launch and grow a new medical informatics division for VBI."

Dkt. No. 2, ¶ 13.[3]  Garner served as the Executive Director of VBI without incident until August

2011.

In August 2011, Walters informed Garner that he and VBI would be audited. Dkt. No. 2,

¶ 23. Garner cooperated with University officials during the audit, and the auditors interviewed

Garner on December 15, 2011. Id. ¶ 26. On February 29, 2012, the auditors sent Garner a draft of

their report and assured Garner that he would have an opportunity to review the report for factual

accuracy and respond to its draft findings. Id. ¶ 27. Garner reviewed the report and sent a

response to the auditors on March 5, 2012, copying Walters, McNamee, and University General

Counsel Kay Heidbreder. Id. ¶ 28. That same day, Garner met with Walters, McNamee, and two

auditors in order to review the draft report and Garner's response. Id. ¶ 29. Although the draft

report contained information about errors related to VBI accounting, no one present at the

meeting indicated that Garner would be removed as the director of VBI or otherwise be

disciplined. Id. ¶¶ 30-31. The auditors then distributed their final report on March 8, 2012.

Id. ¶ 33.

### C. Garner's Change in Position

On March 8, 2012, Walters met with Garner in Walters' office and gave Garner a letter

informing him that his position was being changed to that of Director of the Medical Informatics

and Systems ("MIS") division of VBI. Id. ¶ 34. The letter stated that Garner's salary would not

be reduced as a result of this position change.[4] Dkt. No. 3-3. It further explained that he was

---

[3] The statement that any portion of the funding was in lieu of an endowed chair does not appear in the documents reflecting the terms of his employment offer.

[4] According to the motion to dismiss, plaintiff's current salary has actually increased slightly from $325,000, to $342,645.00.

3

being transferred to "allow [him] to focus more fully on the [MIS] Division, a program that has significant potential for growth through its contributions to research at the interface of medicine, molecular biology and informatics." Id. Additionally, Walters informed Garner that he, McNamee, and Steger had unanimously decided to remove Garner from his position as Director of VBI. Dkt. No. 2, ¶ 34.

### D. Faculty Handbook

As Executive Director of VBI, plaintiff was an "administrative official" and covered by Section 7 of the Virginia Tech Faculty Handbook ("the Handbook"). Section 7.6 of the Handbook provides that officials may be removed for four reasons: non-reappointment, reassignment, abolition of position, or removal for just cause. Pursuant to the terms of the March 8, 2012 letter informing him of the change in position, Virginia Tech considered Garner's change in position a "reassignment" and thus contends that the decision was governed by Section 7.6.3, which states:

> The university may reassign administrative and professional faculty members at any time. Reassignment may involve change in administrative title or supervisory responsibilities, reassignment to another position or department, transfer to a staff position, and/or reduction in salary commensurate with reduced responsibilities. Neither notice of non-reappointment nor removal for cause is required to effect a reassignment. The university's responsibility under reassignment is to make available a substitute position or duties reasonably commensurate with the person's education, experience, and performance.

Dkt. No. 3-2 at 8.

Garner disputes the University's characterization and instead alleges that the change in position was a "severe sanction," per Section 7.6.5:

> A severe sanction generally involves a significant loss or penalty to a faculty member such as, but not limited to, a reduction in title, responsibilities, and salary; or suspension without pay for a period

4

> not to exceed one year imposed for unacceptable conduct and/or a
> serious breach of university policy.

Id. at 9 (emphasis added). With regard to severe sanctions, "the same procedures as dismissal for

cause are to be followed." Id.

Section 7.6.4 contains the procedures allowing the university to remove administrative

and professional faculty for just cause (and also for a severe sanction, Section 7.6.5), and

provides for certain procedural safeguards. For example, "[r]emoval for just cause is preceded by

a meeting of the supervisor and a next-level administrator with the faculty member to review the

reasons for termination, which are presented in writing to the employee." Additionally, upon

notification of the reasons for termination, "[t]he faculty member is given a minimum of three

working days to respond to the reasons." That "response is made to the supervisor, who then

makes a final decision and communicates it to the faculty member. The faculty member may

invoke the applicable grievance procedure." Id. at 8, Section 7.6.4.

### E. Procedural Background

Garner originally filed suit in the Circuit Court for Montgomery County. Because all of

the counts in his complaint asserted claims under 42 U.S.C. § 1983, defendants timely removed

the action to federal court, invoking this court's federal question jurisdiction under 28 U.S.C.

§ 1331. Plaintiff's amended complaint contains three counts, each of which is captioned "Denial

of Due Process in Violation of the United States Constitution and 42 U.S.C. § 1983."

The first count is brought against defendants Sands, McNamee, and Walters in their

official capacities. It alleges that Garner could only be removed from his position for just cause

and that he thus had a property interest in his position. It further alleges that he was removed

with no notice of the possible demotion and no opportunity to contest his removal, in violation of

his due process rights. Dkt. No. 2 at 13-14.

5

Count II asserts the same claims, but is brought against defendants Steger, McNamee, and Walters in their individual capacities. Dkt. No. 2 at 14. It alleges that he has suffered various damages as a result of the acts and omissions of the defendants and that the actions taken by defendants concerning his removal were motivated by evil motive or intent and involved reckless or callous indifference to his due process rights. Id. at 15.

Count III names all defendants in their individual and official capacities.[5] It asserts that Garner's removal from his position as director of VBI, coupled with defendants' "stigmatizing statements indicating that Garner had engaged in professional misconduct and was being removed as Executive Director as a result of failing the audit[,]" implicate his due process rights premised on his liberty interest. Id. at 16. He alleges that the defendants made these statements publicly, that they knew these statements were false when made, and that their actions were "motivated by evil motive or intent and involved reckless or callous indifference to [plaintiff's] federally protected rights." Id. at 18. He also claims that, in addition to the harm to his reputation, he has been damaged because, although his salary has continued, he does not receive certain other aspects of funding because he is no longer the director of VBI. These include a travel budget and the annual laboratory funding for researchers and staff. He seeks $11 million in damages.

## II.     Analysis

### A.      Legal Standards Governing Rule 12(b)(6) Motions to Dismiss

To survive a motion to dismiss, plaintiff's allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). This

---

[5] As noted, Sands was recently substituted for Steger only as to the official capacity claims. Thus, McNamee, Walters, and Dean are named in both capacities in Count III, Sands is named only in his official capacity, and Steger is named only in his individual capacity.

standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, to state a cause of action under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

In their motion to dismiss, defendants assert several arguments. First, they contend that plaintiff's claims against defendants in their official capacities should be dismissed pursuant to Rule 12(b)(1) because defendants are not "persons" in their official capacities for purposes of 42 U.S.C. § 1983 and have Eleventh Amendment immunity from suit. Second, they posit that all three counts should be dismissed pursuant to Rule 12(b)(6) because, as a matter of law, plaintiff did not have a property interest or liberty interest in his position as director of VBI. Third, defendants argue they are entitled to qualified immunity because they did not violate plaintiff's clearly established rights. Fourth and finally—and in the alternative—defendants argue that even if the complaint does set forth facts sufficient to establish a property or liberty interest, the complaint should still be dismissed because plaintiff received due process.

**B.      Eleventh Amendment Immunity**

Defendants rely on Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989) to argue that this court has no subject matter jurisdiction over the claims against defendants in their official capacities. In particular, Will held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. at 71. Even Will, however, recognized the

7

exception set forth in Ex parte Young, 209 U.S. 123 (1908), relied upon by plaintiff here. 491 U.S. at 71 n.10. Specifically, Ex parte Young allows official capacity claims under Section 1983 to be asserted against state officials where a plaintiff seeks only prospective, injunctive relief. See id; see also Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995) ("A state and its officers are not entitled to Eleventh Amendment protection, however, where a plaintiff seeks only prospective, injunctive relief.").

Here, the official capacity claims seek only prospective injunctive relief and thus fall within the Ex parte Young exception.[6] Specifically, Count I of the amended complaint seeks only a cessation of wrongful acts and reinstatement to the Executive Directorship of VBI and thus is not barred. Similarly, Count III (brought against defendants in both their individual and official capacities) seeks monetary damages but also seeks injunctive relief "in the form of a hearing or other opportunity to clear his name." Thus, defendants' motion to dismiss will be denied to the extent it seeks dismissal of official capacity claims seeking prospective, injunctive relief.

### C. Due Process Claims

Defendants next contend that Garner did not have a property or liberty interest in his continued employment with the functional title of Executive Director of VBI and thus his claims are subject to dismissal. Defendants also contend that they are entitled to qualified immunity as to both claims. The court turns to qualified immunity first, since the first prong of that analysis requires a determination of whether Garner has sufficiently pled a constitutional violation.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Smith v. Gilchrist, 749 F.3d 302, 307 (4th Cir.

---

[6] To the extent the complaint is unclear as to which relief is being sought from defendants in which capacities, plaintiff explains that he is not seeking monetary damages from the defendants in their official capacities. Dkt. No. 12 at 13 n.3.

Case 7:14-cv-00081-GEC   Document 24   Filed 10/09/14   Page 8 of 22   Pageid#: 268

2014) (quoting Stanton v. Sims, ___ U.S. ___, 134 S. Ct. 3, 4 (2013) (per curiam)). "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." Durham v. Jones, 737 F.3d 291, 299 (4th Cir. 2013). "To prevail under qualified immunity, [defendants have] to show either that there was no constitutional violation or that the right violated was not clearly established." Id. (citations omitted).

### 1. Property Interest

The court addresses Garner's property interest claim first. As to this claim, the first prong of the qualified immunity analysis requires the court to determine whether Garner has adequately alleged a constitutional violation based on deprivation of a property interest without due process. "To have a property interest subject to procedural due process protection, an individual must be entitled to a benefit created and defined by a source independent of the Constitution, such as state law." Huang v. Bd. of Governors, 902 F.2d 1134, 1141 (4th Cir. 1990). "In the context of employment in public education, the independent source for the property interest has been said to be a contract which provides for continued employment, and which can be terminated only for good cause. Thus, only where the employee has a legitimate entitlement to continued employment do the requirements of due process attach." Royster v. Bd. of Trs., 772 F.2d 618, 620-21 (4th Cir. 1985) (citations omitted); Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982) ("The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause'") (citations omitted); see also Huang, 902 F.2d at 1141 ("[plaintiff's] position as a tenured professor is indisputably a property right entitled to procedural due process protection.").

Defendants cite to a number of cases to support their claim that Garner had no constitutionally protected property interest in his title or in his continued employment as

Executive Director of VBI, relying heavily on the facts that: (1) he remains employed as a tenured faculty member; and (2) his salary was not reduced. In the first of these cases—Huang— a tenured professor asserted that his transfer from one department to another violated his due process rights. 902 F.3d at 1136-37. The court rejected his claim in part because he remained a tenured full professor at the same or effectively greater salary. Id. at 1141. The court reasoned, "'We are convinced that any constitutionally protected property interest [an employee has] as a result of his employment contract [is] satisfied by payment of the full compensation due under the contract.'" Id. at 1142 (quoting Royster, 774 F.2d at 621). Accordingly, Huang's inter-departmental transfer did not result in an infringement of a constitutionally protected property interest. See also id. (Huang court noting that its ruling was consistent with: (1) the law in the Eleventh Circuit that "the transfer of tenured professors from one department to another, without loss of rank or pay, does not implicate any property interest protected by the Due Process Clause"; and 2) rulings "of the Fifth and Sixth Circuits, which have held that certain intra-departmental demotions do not implicate property interests subject to procedural due process protection."); Garvie v. Jackson, 845 F.2d 647 (6th Cir. 1988) (plaintiff, who had lost his position as the head of his department but continued to be employed by the university as a full-time tenured professor at full salary, did not suffer any deprivation of a property interest); Kelleher v. Flawn, 761 F.2d 1079, 1087 (5th Cir. 1985) (reduction of graduate student's teaching duties is not denial of a protected property interest)).

Defendants also rely on the Fourth Circuit's decision in Royster, 774 F.2d 618. The Royster, court concluded that a school superintendent had a property interest, premised on his contract, through the end of his contract. The Court held that he was not deprived of this interest when he was dismissed and relieved of all of his duties six months early, but still received his

full salary and benefits through the end of the contract period. 774 F.2d at 620. The Court concluded, after "careful consideration[,] . . . that [plaintiff's] contract afforded him only the right to be fully compensated, and not the right to occupy the office of superintendent." Id. at 621; see also Fields v. Durham, 909 F.2d 94, 98 (4th Cir. 1990) (explaining that the property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services and relying on Royster to hold that no deprivation exists so long as the employee receives "payment of the full compensation due under the contract") (quoting Royster, 774 F.2d at 621).

Plaintiff attempts to distinguish each of these cases on factual grounds. See Dkt. No. 12 at 18-20. For example, Plaintiff argues that Garvie is inapposite because in that case, the faculty handbook was "clear that no tenure system applies to department heads" and there was no promise from the university that a headship would be terminated only for cause. Garvie, 845 F.2d at 651. By contrast, the handbook here expressly subjects a "reduction in title, responsibilities, and salary" to the protections and procedures of just cause.

Similarly, plaintiff contends that the decision in Huang does not control because the holding there was simply that "the transfer of tenured professors from one department to another, without loss of rank or pay, does not implicate any property interest." 902 F.2d at 1141. Here, Garner states he has indisputably alleged both a loss of rank (his executive directorship to a position subordinate to the executive director) and a loss of other monetary benefits, such as the laboratory subsidy.

The court has considered these cases and agrees that—at first glance—the broad language and the result in most of these cases, particularly Royster and Huang, suggest that the actions taken here do not implicate a property interest. In particular, in Royster the defendant was

11

essentially stripped of all duties, but because he was paid what he was due under the contract, the court concluded he retained the only property interest he possessed. Moreover, the cases generally refer to a property interest in "continued employment." Here, of course, Garner remains employed and his base salary has not been reduced.

Nonetheless, while these cases are instructive to some degree, the scope of the property interest is a fact-intensive inquiry that turns on the terms of the contract (or law) creating the property interest. This is so because a property interest exists in a benefit only where there is a contractual right not to be deprived of that benefit without good cause or just cause. Royster, 774 F.2d at 620-21. Thus, the court must look to what was protected by the just cause provisions of the Handbook to determine the contours of Garner's property interest. See id. So framed, the question becomes whether the action taken against Garner, i.e., his change in position and attendant circumstances, such as the loss of rank and certain benefits but with retention of his base salary, could only be taken with good cause or just cause. This, in turn, requires an application of the Handbook to the alleged facts in this case.

The critical consideration under the terms of the Handbook is whether Garner's change in position was a "reassignment" or instead a "severe sanction." If it truly was a reassignment, the plain language of the Handbook provides that "[n]either notice of non-reappointment nor removal for cause is required to effect a reassignment." Thus, no property interest is implicated for a reassignment. If, however, it was a "severe sanction," then Garner was entitled to the same due process protections that a removal for cause would have entitled him to.

The Handbook states that a reassignment "may involve change in administrative title or supervisory responsibilities, reassignment to another position or department, transfer to a staff position, and/or reduction in salary commensurate with reduced responsibilities." A "severe

Case 7:14-cv-00081-GEC   Document 24   Filed 10/09/14   Page 12 of 22   Pageid#: 272

sanction," on the other hand, "generally involves a significant loss or penalty to a faculty member such as, but not limited to, a reduction in title, responsibilities, and salary; or suspension without pay for a period not to exceed one year imposed for unacceptable conduct and/or a serious breach of university policy." Dkt. No. 3-2 at 9.

The court believes the question of which of these two categories Garner's change in position falls is a very close one. Having considered the facts pled in the case, however, the court is constrained to conclude that plaintiff has adequately pled a plausible claim, see Iqbal, that the change in position here was a "severe sanction" that could only be made for cause. The complaint describes the action as a demotion, and that allegation is certainly supported by the fact that the change included both a reduction in title and responsibilities. That is, Garner was previously employed as the executive director of VBI and is now in a position that reports to the executive director. Put differently, this change was not a lateral move.

Additionally, the complaint alleges that, although his base salary was not reduced, Garner received a reduction in terms of other monetary benefits and prestige, specifically the loss of a $500,000 annual laboratory subsidy and the ability to control the funding for additional researchers. If the reductions constitute a reduction in salary, then it appears the position change would constitute a reduction in "title, responsibilities, and salary" and would fall squarely within the "severe sanction" category. Moreover, Garner alleges that this loss of funding, in particular, has "made it impossible or nearly impossible for him to secure needed personnel, research partners, and funding for the research projects on which his career as a professor and scientific researcher depends." Dkt. No. 2 at ¶¶ 54, 56.

Based on these facts, it is at least plausible that Garner had a property interest in his position as Executive Director of VBI. While ultimately discovery may show that the change in

position was in fact a reassignment, at the motion to dismiss stage, the above facts render it plausible that Garner had a property interest implicated by the change in position.[7] Thus, the court will not dismiss this claim outright and concludes that Garner has sufficiently alleged a constitutional violation.

The court next turns to the second prong of qualified immunity—whether the employment action here violated Garner's clearly established rights. For the same reasons that the court has explained that the proper characterization of this change in position is a difficult question, the court concludes that defendants are entitled to qualified immunity. Quite simply, it was not "clearly established" that the employment action here violated a protected property interest. "A right is clearly established if the contours of the right are sufficiently clear so that a reasonable [official] would have understood, under the circumstances at hand, that his behavior violated the right." Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir.2007). In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011).

In this case, there is much legitimate debate about the nature of this change in position and whether it constituted a "severe sanction" entitling Garner to procedural protections. Indeed, if the University's counsel had been reviewing the cases and looking at the language and holdings in Royster and Huang, it is easy to understand that counsel would have believed the change in position here would not violate the Handbook, particularly since Garner's base salary was continued. The court thus concludes that defendants are entitled to qualified immunity on

---

[7] The court notes, however, that the result could well be different after discovery, and that there are facts that support both characterizations. Contrary facts supporting defendants' position are that: (1) the change seems to fall within the reassignment category because it involves a change in administrative title and supervisory responsibilities, which is characterized as a reassignment; and 2) arguably the change is not a "significant loss or penalty" and does not include a reduction in title, responsibilities, and salary (like the example of a severe sanction) since his salary was not reduced. Additionally, the letter to Garner notifying him of the decision described it as a reassignment, although that characterization is not dispositive here. See Francis, 588 F.3d at 2009 (when ruling on a motion to dismiss, the court must accept the allegations in the complaint as true).

14

this claim because they have shown that the right was not clearly established. Accordingly, any claim for money damages based on a violation of Garner's property interest will be dismissed.

## 2. Liberty Interest

The court turns next to the allegation that defendants violated Garner's liberty interest. For the reasons set forth herein, the court concludes Garner has failed to state a sufficient claim of a constitutional violation on that issue and thus that this claim must be dismissed as a matter of law.

The United States Court of Appeals for the Fourth Circuit addressed the liberty interest implicated by statements made during the termination of a public employee in <u>Sciolino v. City of Newport News</u>, 480 F.3d 642 (4th Cir. 2007). There, the court held that a public employee (even one without a contract or tenure) has a liberty interest "implicated by public announcement of reasons for an employee's discharge." 480 F.3d at 645-46 (citation omitted).

Sciolino's claim arose from the combination of two distinct rights protected by the Fourteenth Amendment: (1) the liberty to engage in any of the common occupations of life; and (2) the right to due process "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." 480 F.3d at 646. To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the allegations or statements of the employer:

> (1) placed a stigma on his reputation;
> (2) were made public by the employer;[8]
> (3) were made in conjunction with his termination or demotion; and
> (4) were false.

---

[8] In terms of the requirement that the statements be made publicly, a plaintiff must allege a likelihood that prospective employers or the public at large will have access to the false statements of the employer. <u>Id.</u> at 650.

Id. at 646 (citing Stone v. Univ. of Md. Med. Sys. Corp. 855 F.2d 167, 172 n.5) (4th Cir. 1988)). This is sometimes referred to as a "stigma plus" claim.

Garner points to three statements in support of his liberty interest claim. First, he alleges that Vice President Walters sent a message to "all VBI students, faculty and staff, falsely informing them that Professor Garner was 'relinquishing the duties of the Executive Director.'" Dkt. No. 2 at ¶ 44. Second, he claims when Defendant Dean took over as interim director of VBI, he held a meeting with VBI students, faculty, and staff, where he announced that Garner had been removed as a result of failing the audit. Id. ¶ 46. Third, he claims that a statement like Dean's was made approximately seven months later by Dr. Stephen Bieri, "a consultant for the University who had participated in the hiring of Professor Garner," to a member of VBI's Scientific Advisory Board. According to the complaint and "[o]n information and belief, Dr. Bieri made this statement upon the authorization, approval and/or direction of one or more of the Defendants." Id. ¶ 47.

The court is addressing this claim on a motion to dismiss, and thus must credit the complaint's allegations and the reasonable inferences therefrom in Garner's favor. Under that standard, the court will assume without deciding that he has sufficiently pled the first, second, and fourth elements of the stigma plus test, as discussed briefly below. Because he cannot establish that the statements were made in connection with a demotion or termination as the Fourth Circuit defines it, however, the court dismisses the claim.

First, as to the "stigma" element, the Fourth Circuit has "distinguished statements that imply . . . serious character defendants [such as dishonesty or immorality] from statements that simply allege 'incompetence.'" Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292 (4th Cir. 2006). Garner claims that the false accusations here, i.e., that he "failed the audit," suggest

16

he is dishonest. The court does not believe this is necessarily so, and that an equally plausible interpretation is that he simply was careless or incompetent in his financial bookkeeping. See, e.g., Zarrelli v. City of Norfolk, 2014 WL 2860295 (E.D. Va. June 23, 2014) (granting motion to dismiss where allegedly stigmatizing statements were that plaintiff employee was not following certain office policies because they did not satisfy the stigma test from Ridpath); but see Cox v. N. Va. Trans. Comm'n, 551 F.2d 555 (4th Cir. 1976) (statements that the plaintiff was fired after an audit showed financial irregularities in the area of expense account procedures were sufficiently stigmatizing). Nonetheless, at the motion to dismiss stage, the court will assume that he has sufficiently alleged a stigmatizing statement. See Cox, supra.

The court also assumes that Garner has sufficiently pled that the statements were made publicly. He claims that both Walters' and Dean's statements were made to all VBI faculty, students, and staff, Dkt. No. 2 at ¶¶ 44-46, and there is at least a question as to whether such disclosure constitutes "public" disclosure. He further alleges that Walters' message was "subsequently forwarded throughout the University and likely beyond" and that the substance of Dean's statement "became known to persons throughout the academic community, including, on information and belief, the leaders of other institutions of higher learning." Id. at ¶¶ 45, 46. A statement is sufficiently publicly disseminated if the plaintiff alleges a likelihood of actual disclosure to prospective employers. Sciolino, 480 F.3d at 650.

Skipping for the time being the third element and turning to the fourth, the statements that he "relinquished his position" and that he "failed his audit" are, at least according to the allegations of the complaint, false. Garner claims that the audit process itself was inconsistent with the University's standards for internal audits. Id. at ¶ 32. He further claims that "[a]t worst, the Report identifies a handful of minor mistakes that were made in good faith, were quickly and

easily corrected, and led to no harm" and that "where the Report suggests misconduct of any sort by Professor Garner, the Report admits that the conduct at issue was fully consistent with applicable University policy." Id. at ¶ 31. Again, while there is some question as to whether the statement that he "failed the audit" is false, the court will assume he could establish the fourth element.

Returning to the third element, the court concludes that plaintiff has not sufficiently stated a claim that these statements were made in conjunction with a significant demotion or termination. Ridpath, relied upon by plaintiff, contains an instructive discussion of the circumstances under which a job reassignment can constitute a "significant demotion" for a claim alleging a liberty interest under the so-called "stigma plus" test. In Ridpath, the plaintiff was hired as an assistant athletic director, was given the title of NCAA "Compliance Director," and was in charge of ensuring the university athletic department's compliance with NCAA rules. Id. at 300. His complaint alleged that his chosen career was in "intercollegiate athletics administration, particularly in the area of overseeing compliance with NCAA rules." Id. According to his complaint, he was without fault, but used as a scapegoat by the university when he uncovered certain violations of NCAA rules by others. He was essentially forced to take another position outside his chosen field, and his transfer was labeled as a "corrective action" by the university in its report to the NCAA about the infractions. The plaintiff claimed that he had no opportunity to dispute this label and that it was preventing him from obtaining other employment in his chosen field. Based on these facts, the Fourth Circuit agreed that he had sufficiently stated a claim that he had been deprived of a liberty interest without due process. See generally Ridpath, 447 F.3d 292; see also Hall v. City of Newport News, 469 F. App'x 259, 263 (4th Cir. 2012) (unpublished).

18

In <u>Hall</u>, the court determined that the plaintiff had pled sufficient facts to show that his demotion qualified as "significant" under <u>Ridpath</u> where he was essentially demoted from a certified law enforcement officer with the police power to make stops, issue summons and warrants, and make arrests, and instead assigned to a civilian position and "stripped . . . of his law enforcement powers and status as a police officer." 469 F. App'x at 261, 262. His liberty interest was therefore implicated. <u>Id.</u>

Both <u>Ridpath</u> and <u>Hall</u> noted that to implicate a liberty interest, a demotion must be significant, such as reassignment of an employee "to a position outside his field of choice." <u>Ridpath</u>, 447 F.3d at 309. Thus, not any demotion will suffice; instead, the demotion or reassignment must be to "a job far beneath the one [plaintiff] had, where being so demoted is to be as effectively excluded from one's trade or calling as by being thrown out on the street." <u>Ridpath</u>, 447 F.3d at 314 (quoted in <u>Hall v. City of Newport News</u>, 469 F. App'x 259, 262 (4th Cir. 2012)). The <u>Ridpath</u> court explained:

> Ridpath was not simply transferred from one position to a slightly less desirable or even a better one . . . Rather, in a dramatic change of status equivalent to outright discharge, he was ousted from the University's Department of Athletics and completely excluded from his chosen field of intercollegiate athletics administration.

447 F.3d at 311. <u>See also</u> <u>id.</u> at 311 n.19 (distinguishing the foregoing circumstances from demotions that involved "no change in line of work").

There are significant factual distinctions between the facts in <u>Ridpath</u> and <u>Hall</u>, on the one hand, and the facts here, on the other. Those distinctions lead the court to conclude that Garner's liberty interest was not violated here. <u>See</u> Dkt. No. 13 at 3-5. In particular, while the plaintiffs in those cases were effectively prevented from working in their chosen fields, Garner remains employed in the same field. Garner remains employed in academia at a high level of

19

management and has maintained his full salary. Thus, his "demotion," even assuming it

implicated a property interest based on the Handbook's protections, is not sufficient to implicate

a liberty interest. The reduction in title and loss in laboratory funding, standing alone, are simply

insufficient to support Garner's allegation that he has been "excluded . . . from his trade or

calling as a professor, scientific researcher, administrator, and director of a scientific institute."

Dkt. No. 12 at 24. See Ridpath, supra; Hall, supra. This is particularly true where he is currently

performing duties (albeit only a portion of them) that he was originally hired to perform, by his

own admission. See Am. Compl. ¶ 17. That is, he has been given a position as director of MIS,

an institute within VBI and an entity that he was originally hired to establish. See id. Thus, no

plausible liberty interest claim arises on the facts of this case.[9]

### D.  Whether Garner Received Due Process

Defendants argue, in the alternative, that if the complaint establishes a constitutionally-

protected property or liberty interest, Garner received all the process he was due prior to his

reassignment, in the form of written notice about the reassignment and the opportunity to meet

with defendant Walters to discuss it. Moreover, defendants note that a Loudermill[10] hearing

(with its basic requirements of notice and an opportunity to be heard) is required before a

termination, but Garner remains employed "at full salary as a tenured professor." Dkt. No. 4 at

14. Defendants further point out that Garner received a copy of a draft audit and responded in

writing, that he received written notice of the reassignment, and that his complaint alleges he met

briefly with Walters to discuss the matter prior to reassignment. Additionally, defendants

---

[9] For the same reasons, defendants would also be entitled to qualified immunity on this claim, since they have shown that plaintiff did not adequately allege a constitutional violation. Durham, 737 F.3d at 299; See also Garvie, 845 F.2d at 652 (where plaintiff had been removed as a department head but continued as a tenured professor without a change in salary, the defendants were entitled to qualified immunity because there was no violation of plaintiff's clearly established liberty right).

[10] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).

emphasize that plaintiff did not avail himself of the grievance process following the reassignment. Thus, defendants suggest he received all process he was due.

At the motion to dismiss stage, the court is not tasked with finally resolving plaintiff's claims, but only with determining whether he has stated a "plausible claim to relief" in his complaint. See Iqbal, supra. Based on the allegations in the complaint, the court concludes that Garner has adequately alleged that he did not receive the process due. According to the plain allegations of the complaint, the first notice he was given of reassignment was in the very brief meeting with Walters. At that time, Walters told him that he could not discuss it at length because Walters was not feeling well, and that was the end of any "discussion." According to the complaint, there was no warning of possible reassignment prior to his receiving the letter and thus Garner was not given "a minimum of three working days to respond to the reasons for termination," as set forth in the handbook at Section 7.6.4. Plaintiff explains in some detail why due process was not satisfied here and that analysis is sufficiently persuasive to withstand a motion to dismiss. See, e.g., Dkt. No. 12 at 28-32. Thus, the court will not dismiss his claims on this basis.

**III. Conclusion**

For the foregoing reasons, defendants' motion to dismiss will be granted in part and denied in part. In summary, to the extent the complaint is unclear, the only relief that plaintiff can seek against defendants in their official capacities is prospective injunctive relief. To the extent his complaint could be interpreted to seek other relief against defendants in their official capacity, those claims are dismissed. The court concludes that plaintiff has not sufficiently pled a deprivation of a protected liberty interest and thus will dismiss that claim in its entirety. The court further concludes that defendants are entitled to qualified immunity on plaintiff's claim of a

21

due process violation with regard to his property interest and thus will dismiss plaintiff's claim for monetary damages against defendants as to that claim. Plaintiff's claim for prospective injunctive relief as to his property interest claim may go forward at this time.

ENTER: This 9th day of October, 2014.

_Sam Conrad_
Chief United States District Judge